IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ATLANTIC MUTUAL INSURANCE
COMPANY, a New York Corporation,

        Plaintiff,

   v.

BUSINESS COMPUTER TRAINING
INSTITUTE (aka "BCTI"), BCTI COMMUNITY
SERVICES LIMITED PARTNERSHIP f/k/a BCTI
INCOME FUND I, a Washington corporation;
MORRIE and LINDA PIGOTT; TOM and LINDA
JONEZ; AMANDA M. HAWLEY, an individual
residing in Dallas, Oregon; ROBERT A.
RUCKOLD an individual residing in Vancouver,
Washington; JULIE M. BENNETTE, an individual
residing in Portland, Oregon,

        Defendants.

CV-08-265-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

///

///

1 - OPINION AND ORDER

## INTRODUCTION

Plaintiff, Atlantic Mutual Insurance Company ("Atlantic Mutual"), brings an action for declaratory judgment pursuant to 28 USC § 2201(a) and FRCP 57 against Business Computer Training Institute ("BCTI"), its shareholders (Morrie Pigott, Linda Pigott, Tom Jonez and Linda Jonez), and three individual defendants who purchased the educational services of BCTI (Amanda M. Hawley, Robert A. Ruckold and Julie M. Bennette). Defendants Hawley, Ruckold and Bennette are also plaintiffs in a class action lawsuit against BCTI which is currently pending in the Western District of Washington ("*Hawley*"). BCTI seeks a declaration that it is not obligated to defend or indemnify BCTI in the *Hawley* action or in another action filed against BCTI in Multnomah County Circuit Court in Oregon.

Atlantic Mutual is incorporated and has its principal place of business in the state of New York. None of the defendants share this citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.[1] Therefore, this court has jurisdiction pursuant to 28 USC § 1332.

This matter come before this court on defendants' motion to transfer venue pursuant to 28 USC § 1404(a) (docket #5).[2] For the reasons that follow, this motion is granted.

///

## BACKGROUND

---

[1] BCTI is incorporated in and has its principal place of business in Washington. All of the individually named defendants also reside in Washington, except for Bennette and Hawley who both reside in Oregon. Although "residence" does not equal "citizenship" for purposes of diversity jurisdiction, this court assumes, without deciding, that the individually named defendants' residency also their citizenship for purposes of diversity jurisdiction based on the lack of any jurisdictional challenge.

[2] Because a motion to transfer venue does not address the merits of the case, it is a non-dispositive pre-trial matter which a Magistrate Judge may determine pursuant to 28 USC § 636(b)(1)(A). *See Paoa v. Marati*, 2007 WL 4563938, *2 (D Ha Dec. 28, 2007) (citing cases).

2 - OPINION AND ORDER

I.    **Underlying Lawsuits**

BCTI is a Washington corporation with its principal place of business in Tacoma, Washington. It offered vocational training to students at campuses in Oregon and Washington until it ceased operations in 2005. At all times material to this lawsuit BCTI maintained a designated agent for service of process in Oregon. Plaintiff's Request for Judicial Notice (docket #23), Ex. A. At least three groups of former students have filed lawsuits against BCTI alleging that BCTI misled them regarding the quality of education and training it provided, its job placement record for graduates, and the success of its graduates.

A.    *Wright* **Lawsuit**

In March 2005, a group of students filed a class action law suit in Pierce County Superior Court, Washington, alleging that BCTI and other defendants engaged in criminal activity, fraud, misrepresentation, and breach of contract in the course of promoting and providing its educational services. *Wright, et al. v. Bus. Computer Training Inst., Inc., et al.*, Civil No. 05-2-05763-2, Superior Court of the State of Washington for Pierce County; Jonez Decl., ¶ 7, Ex. B, pp. 9-20 (Third Amended Complaint filed May 10, 2005). The plaintiffs in *Wright* purport to represent the putative class of all persons who were enrolled in BCTI at any BCTI campus in Washington. *Wright* has now been settled. Leach Decl. (docket # 36), Ex. A, p. 3.

B.    *Thornburg* **Lawsuit**

In June 2005, a second group of 81 students at BCTI's campuses in Beaverton and Salem, Oregon, filed a lawsuit in Multnomah County Circuit Court. *Thornburg et al. v. BCTI Cmty. Servs. Ltd. Partnership et al.*, Civil No. 0506-06955, Circuit Court of the State of Oregon for the County of Multnomah; Jonez Decl., ¶ 8 & Ex. A, ¶ 7. *Thornburg* was dismissed on

3 - OPINION AND ORDER

procedural grounds and refiled in March 2007 as Case No. 0703-02989. Complaint, Ex. A. These plaintiffs are suing BCTI for common law fraud, alleging that they were induced into paying tuition by BCTI's false claim that 87% of its graduates find computer-related employment at $10.00 per hour shortly after graduation. The *Thornburg* plaintiffs seek recovery for the cost of tuition and books and for "substantial emotional distress."

      C.      <u>*Hawley* **Lawsuit**</u>

On January 3, 2008, three former BCTI students filed a class action lawsuit in Washington state court against BCTI individually and on behalf of a proposed class of all persons who had been enrolled for any classes at any BCTI campus in Oregon. *Hawley et al. v. Bus. Computer Training Inst., Inc., et al.,* Civil No. 08-2-04093-9, Superior Court of the State of Washington for Pierce County; Complaint, Ex. B. The case was subsequently removed to the Western District of Washington. *Hawley et al. v. Bus. Computer Training Inst. Inc., et al.*, Civil No. 08-CV-05055-BHS, WD Wash; Meier Decl., ¶ 2 & Ex. A.

The same three individuals named in this action (Hawley, Rockhold and Bennette) are the putative representative plaintiffs in *Hawley*. They allege several causes of action arising under Washington statutes and common law actions in contract, tort and fraud. In essence, they allege that BCTI falsely advertised and promoted training programs that claimed to qualify students to obtain computer-related employment, promised its training would enable graduates to obtain high-paying jobs in a variety of computer and business settings, and advertised a high job-placement rate. They claim that these representations and advertisements induced the plaintiffs to enroll in BCTI and pay substantial sums of tuition. They further allege that due to its

negligent operation, the education BCTI actually provided was deficient in multiple respects. They seek compensation for financial and emotional damages.

In April 2008, defendants filed a motion to dismiss and to compel and plaintiffs filed motions to certify a class and to amend. Meier Decl., Exs. A & B. The parties also filed a Joint Status Report. *Id*, Ex. A. The court issued orders on May 9, 2008, denying defendants' motion to dismiss, granting plaintiffs' motion to amend, and granting in part defendants' motion to compel. *Hawley v. Bus. Computer Training Inst., Inc.*, 2008 WL 2048325 (WD Wa May 9, 2008); *Hawley v. Bus. Computer Training Inst., Inc.*, 2008 WL 2048329 (WD Wa May 9, 2008). The motion to certify a class is scheduled for consideration on May 30, 2008. *Hawley*, 2008 WL 2048325 at *4.

## II.   Insurance Policies

BCTI purchased five successive annual Commercial General Liability policies from Atlantic Mutual from September 20, 1997, through September 20, 2002. Jonez Decl., ¶ 3. Subsequently, BCTI purchased three Primary and three Commercial General Liability policies from Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") from 2002 to 2005. *Id*, ¶ 4. BCTI purchased each of the above policies through a broker located in Tacoma, Washington. *Id*. The policies provided general liability and personal injury/advertising injury coverage.

The Atlantic Mutual policy provided coverage for the BCTI locations in Oregon at issue in *Thornburg* and *Hawley*. Smith Decl., ¶ 4, Ex. A. It also contained several "Oregon Amendatory Endorsements," which conformed the policies' terms concerning cancellation and renewal to Oregon law. *Id*.

5 - OPINION AND ORDER

BCTI tendered the defense of *Thornburg* and *Hawley* to both Atlantic Mutual and Philadelphia Indemnity. Both insureres accepted the tender of the defense under a full reservation of rights.

## III.     Coverage Litigation

In October 2005, Philadelphia Indemnity filed two declaratory actions against BCTI in the Western District of Washington seeking a determination of its rights under the applicable policies for coverage of *Wright* and *Thornburg*. Jonez Decl., ¶¶ 9, 10, Exs. A & B. These cases have been consolidated and are still pending as *Philadelphia Indem. Ins. Co. v. Bus. Computer Training Inst., Inc.*, Civil Case No. 05-CV-05706-BHS, WD Wash. Jonez Decl., ¶ 12, Ex. C. *Hawley* and *Philadelphia* are before the same district judge, The Honorable Benjamin H. Settle. *Id*, ¶ 11. The coverage dispute in *Philadelphia* originally concerned BCTI's operation of campuses in both Washington and Oregon. Now that *Wright* has settled, *Philadelphia* only concerns BCTI's operation of campuses in Oregon as alleged in *Thornburg*.

In March 2008, Atlantic Mutual filed this action seeking a determination of the parties' rights for coverage of *Thornburg* and *Hawley* under the five policies it issued to BCTI. Both of these lawsuits concern BCTI's operation of campuses solely in Oregon. On May 9, 2008, over three years after filing *Philadelphia*, Philadelphia Indemnity filed a motion to transfer venue to this district. Leach Decl. (docket #36), ¶ 4 & Ex. A. In addition, Atlantic Mutual has filed a motion for leave to amend its complaint to add Philadelphia Indemnity as a defendant to this action (docket #26).

BCTI seeks to have this matter transferred to the Western District of Washington. It maintains that this court should transfer venue there for its convenience and in the interest of

justice so that one judge may determine the respective duties of each insurance company in the underlying lawsuits which involve "similar facts and legal issues, and potentially concurrent coverage for the same claims."

## STANDARDS

Pursuant to 28 USC § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this statute is "to prevent the waste of time energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 US 612, 616 (1964) (internal quotations, ellipsis, and citation omitted). In deciding a motion under this section, "a court must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum. The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co v. Commonwealth Edison Co.*, 805 F2d 834, 843 (9th Cir 1986) (internal citation omitted). Balancing the relevant interests "requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F3d 495, 498 (9th Cir 2000), *cert denied*, 531 US 928 (2000). These factors include:

> (1) the location where the relevant agreements were negotiated and executed,
> (2) the state that is most familiar with the governing law,
> (3) the plaintiff's choice of forum,
> (4) the respective parties' contacts with the forum,
> (5) the contacts relating to the plaintiff's cause of action in the chosen forum,
> (6) the differences in the costs of litigation in the two forums,

> (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and
> (8) the ease of access to source of proof.

*Id* at 498-99.

Also significant is the presence of a forum selection clause or any relevant public policy of the forum state. *Id* at 499.

Additionally, courts deciding § 1404 transfer motions have relied upon a set of factors developed by the Supreme Court in the context of the doctrine of *forum non conveniens*. *See Decker,* 805 F2d at 843 ("*forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion."); *see also Tel. Mgmt. Corp. v. Goodyear Tire & Rubber Co.*, 5 F Supp2d 896, 898 (D Or 1998) (applying factors); *Ius v. Butcher*, 680 F Supp 343, 348 (D Or 1987) (same). Thus, as part of its inquiry into whether a transfer is warranted "in the interest of justice," a court "should consider private and public interest factors affecting the convenience of the forum." *Decker*, 805 F2d at 843, citing *Piper Aircraft Co v. Reyno*, 454 US 235, 241 (1981).

> Private factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Id*, quoting *Gulf Oil Corp v. Gilbert*, 330 US 501, 508 (1947).

> Public factors include "the administrative difficulties flowing from court congestion the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."

*Id*, quoting *Piper Aircraft*, 454 US at 241 n6.

## ANALYSIS OF FACTORS

Both parties agree that this case could originally have been brought in the Western District of Washington pursuant to 28 USC § 1391(c). Therefore, this court must consider whether the balance of the factors weighs sufficiently in favor BCTI to overcome Atlantic Mutual's strong interest in its choice of forum.

### I.   Convenience to Parties and Availability of Evidence and Witnesses

The insured defendants all reside or are headquartered in Washington. The remaining defendants will not participate in any meaningful way since the duty to defend is strictly an issue of contract interpretation that does not involve them. Furthermore, Atlantic Mutual has no particular ties to Oregon and does business in Oregon, Washington, and other states. Therefore, Washington is equally convenient to Atlantic Mutual and more convenient to defendants.

As for the availability of the evidence and witnesses, the insurance policies were issued by an insurance broker in Washington to Washington residents. Therefore, witnesses on the coverage issue will be located in Washington. Although Atlantic Mutual suggests that relevant documents are located in Oregon, BCTI submits that it no longer has any documents in Oregon. All of its Oregon schools closed in 2005, and the leased properties reverted back to their owners. Jonez Decl. II (docket #33), ¶ 3. Any and all relevant documents in BCTI's possession are now located with BCTI's attorneys in Washington or at its storage facilities in Washington. Atlantic Mutual also may need to obtain documents from the Oregon Department of Education, but those public documents can easily be obtained and authenticated regardless of whether this lawsuit is pending here or in Washington.

Atlantic Mutual does not dispute that litigating this case in Washington will cause it any inconvenience. Instead, it contends that if it has a duty to defend BCTI in *Hawley*, then trial in Oregon would be more convenient than in Washington. At that point, Atlantic Mutual may need the testimony of some of the *Thornburg* plaintiffs or other former students or staff from BCTI's Oregon campuses who would not be within the subpoena power of the Western District of Washington. FRCP 45(c)(3)(A)(ii). Admittedly, it is less convenient and desirable to obtain the testimony by deposition pursuant to FRE 801(b)(2). However, Atlantic Mutual is putting the cart ahead of the horse. It fears that if this case is transferred to the Western District of Washington now, then it will be more difficult to later transfer *Hawley* for trial from Washington to Oregon where it purportedly belongs. Although *Hawley* only involves BCTI's campuses in Oregon, it was filed initially in Washington state court by the same Washington attorney who had filed *Wright*. Litigation in Washington is convenient for at least two Oregon students (Hawley and Bennette) who chose to file *Hawley* in Washington rather than Oregon. Even if it would be more convenient to litigate *Hawley* in Oregon, that does not compel denying defendants' motion to transfer. This case only involves the issue of insurance coverage. To resolve that issue, Washington is a more convenient forum both for the convenience of all parties and availability of the evidence and witnesses.

## II.     Location of Negotiation and Execution of Insurance Agreement

As previously noted, the insurance contracts at issue were negotiated and purchased in Washington, for the coverage of Washington residents. To the extent that extrinsic evidence of the contracts' terms are needed for their interpretation, that evidence would be located in Washington. This factor weighs in favor of transfer.

**III.    Applicable Law**

The parties contest what law will apply to the interpretation of the insurance contracts at issue. BCTI asserts Washington law should control because the insurance contracts were negotiated and issued in Washington to a Washington corporation by a Washington insurance broker. Atlantic Mutual responds that Oregon law should apply because the injuries asserted in the underlying lawsuit all occurred in Oregon to Oregon students and because the policies contemplated performance in Oregon by including an "Oregon Amendatory Endorsement" to conform the policies to provisions of Oregon law concerning cancellation and renewal.

Neither party has submitted copies of the policies nor suggested that the policies contain a forum selection clause or choice of laws provision. As a result, the law applicable to interpretation of the contracts must be determined by Oregon's choice of laws rules. Under Oregon choice of law principles, "issues of substantive law must be resolved by the law of the state with the most contacts." *Industrial Indemnity Co. v. Pac. Mar. Assoc.*, 97 Or App 676, 679, 77 P2d 1385, 1386 (1989), citing *Davis v. State Farm Mut. Ins.*, 264 Or 547, 549, 507 P2d 9, 10 (1973) (additional citation omitted).[3] The proper focus of this inquiry is to look at the purported contacts to determine which state has the most significant interest in having its law apply to the dispute. *Manz*, 117 Or App at 83, 843 P2d at 483.

No one factor controls. For example, the location of the injury for which coverage is sought does not control coverage. In *Industrial Indemnity*, the insurance policy covered the

---

[3] If this court were actually interpreting the contracts, it would address the threshold question of "'whether the laws of the states having a connection with the controversy are in conflict' . . . ." *Manz v. Continental Am. Life Ins. Co.*, 117 Or App 78, 80-81, 843 P2d 480, 481 (1992), quoting *Lilienthal v. Kaufman*, 239 Or 1, 5, 395 P2d 543, 544 (1964), *opinion adhered to on recons.*, 119 Or App 31, 849 P2d 549 (1993), *rev denied*, 317 Or 162, 856 P2d 317 (1993). However, because the interpretation of a particular provision is not yet at issue, but only which state's law would control, this step is unnecessary at this point.

11 - OPINION AND ORDER

corporation's activities in Oregon and the underlying injury incurred in Oregon to an Oregon employee.  Nevertheless, the court held that California law controlled the interpretation of an insurance contract where the insurance contract was issued in California to a California corporation with a special "California Amendatory Endorsement" that controlled cancellation of the policy.  *Industrial Indemnity*, 97 Or App at 679, 77 P2d at 1386-87.  Similarly, in *Mid-Century Ins. Co v. Perkins*, 209 Or App 613, 619-620, 149 P3d 265, 268 (2006), *aff'd*, 344 Or 196, 179 P3d 633 (2008), Oregon law controlled an insurance policy issued in Oregon by an insurer doing business in Oregon to Oregon residents covering a vehicle registered in Oregon, even though the injury occurred in Washington where one of the insureds had moved.

In contrast, in *Mutual of Enumclaw Ins. Co. v. Payne*, 164 Or App 664, 670, 993 P2d 186, 189 (1999), the court held that Oregon law applied where a Washington insurance company authorized to do business in Washington and Oregon issued a policy in Washington to its insured that covered vehicles registered in both Washington and Oregon, but where the injury occurred in Oregon to an Oregon resident driving one of the vehicles registered in Oregon.

The location of the policy holder is also not dispositive.  Despite the fact that an Illinois trust acted as the policy holder, *Manz*, 117 Or App at 82-83, 843 P2d at 482-83, held that Washington law controlled where the insurance policy was purchased in Washington for coverage in Washington and all the premiums and claim processing occurred in that state.

Both parties argue that their desired forum state has the most significant relationship with the insurance policies.  At this point, the issue is not whether Oregon or Washington law must be applied, but whether the likelihood that Washington law applies weighs in favor of having this dispute transferred to a federal court in Washington.  An additional consideration is the fact that

the court in Washington will have to make a similar determination with respect to the Philadelphia Indemnity policies as they apply to injuries that occurred in Oregon. This raises the possibility of discordant determinations of the applicable law.

Given the similarity between this case and *Industrial Indemnity*, this court concludes that Washington law is likely to apply to the interpretation of this policy. Atlantic Mutual's policy was issued in Washington to a Washington Company by a Washington broker for coverage of that company's operations in both Washington and Oregon. The fact that the alleged injuries occurred in Oregon is not a sufficient contact to render Oregon law controlling. Neither does the fact that the policies include Oregon endorsements because those endorsements only govern cancellation and renewal of the insurance policies which are not at issue in this case.

Moreover, it would be beneficial for the determination of which law should apply to the Atlantic Mutual policies to be made by the same court that will determine the law governing the Philadelphia Indemnity policies. To the extent that this analysis is similar with respect to these two insurers' policies, the determination of which law controls should be consistent.

**IV.      Judicial Economy**

Finally, BCTI argues that its would be more efficient to have this case transferred to the Western District of Washington where both *Hawley* and the coverage issues concerning Philadelphia Indemnity's policies are pending before the same judge. Both this case and *Philadelphia* involve essentially the same facts and legal issues and educating two different judges about those facts and issues is wasted effort for the courts and the litigants.

Atlantic Mutual admits that having both insurers in the same coverage action is the most efficient and cost-effective way for all parties to fully adjudicate the legal issues raised by this

13 - OPINION AND ORDER

lawsuit. Nevertheless, it asserts that whatever duplication of efforts would occur if this case remained here soon will be eliminated. Philadelphia Indemnity has filed a motion in *Philadelphia* to transfer venue to this court, and Atlantic Mutual has recently filed a motion to add Philadelphia Indemnity as a defendant to this case. However, those motions have not yet been decided. If either of those motions is denied, then duplication will not be eliminated.

Because the underlying litigation against BCTI in *Hawley* began and is still pending in the Western District of Washington where the issue of insurance coverage by Philadelphia Indemnity also is pending, judicial economy favors transferring this case there. If the coverage issue is decided adversely to Atlantic Mutual and/or Philadelphia Indemnity, then the parties can pursue transfer of *Hawley* to this court for further proceedings.

**ORDER**

Given that multiple lawsuits related to this case are presently pending before Judge Settle in the Western District of Washington, that Washington has the most contacts with the insurance contract at issue, and that litigating this suit in Washington would convenience defendants without imposing any hardship on Atlantic Mutual, the interest of justice would be served by transferring this case to the Western District of Washington. Therefore, defendants' Motion for Transfer of Venue (docket #5) is GRANTED. The Clerk is directed to forward the file, along with a copy of this Order, to the Clerk of Court, United States District Court for the Western District of Washington.

DATED this 22nd day of May, 2008.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge